## CLASSIFICATION OF RAILROAD COMPANIES AND INTERURBAN RAILROAD COMPANIES.

Common Pleas Court of Franklin County.

STATE OF OHIO V. THE LORAIN, ASHLAND & ·SOUTHERN RAILWAY CO.

Decided, February, 1916.

*Railways—Determination of Amount of Excise Tax Due from—Companies May Have a Double Character and do Both a Railroad and an Interurban Railroad Business.*

1. The distinction between a railroad company and an interurban railroad company is not found in its motive power, but rather in the frequency of the service it is rendering and of the stops made by its trains and the character of its business.
2. A single transportation operation may be divided into two parts, and the carrier may for the purpose of fixing its excise tax be regarded as a railroad company as to a part of its business and as an interurban railroad company as to the remainder.
3. The allegation of the answer of the defendant company as to its passenger or motor car service is such as to constitute it, as against demurrer, an interurban railroad company as to that part of its business.

*Edward C. Turner,* Attorney-General, and *C. D. Laylin,* for plaintiff.

*Morton, Irvine & Blanchard, Semple & Sherrick* and *R. J. Odell,* contra.

EVANS, J.

Decision on demurrer to the answer.

This action seeks to recover against defendant excise tax claimed by the state for the year next preceding July 1, 1914, upon the gross receipts of that part of defendants' railroad operated between Ashland and Custaloga, a distance of about twenty-one miles. The claim of the state is that said railroad is and was during said time a corporation organized under the laws of Ohio for the purpose of operating a railroad wholly within

this state from Lorain to Custaloga, and, as such, under the statute, the claim of the state is that defendant is liable for the payment of four per cent. excise tax upon it gross receipts.

There is no question in this case as to the liability of defendant to pay said excise tax as a commercial railroad upon that part of defendant's railroad operated between Ashland and Lorain. The question here is whether that branch of said railroad between Ashland and Custaloga is a commercial railroad and thereby subject to the four per cent. excise tax, or whether it is an interurban railroad and should pay but one and two-thirds per cent. excise tax upon its gross receipts for that part of the road.

Two questions are presented which are, more specifically stated:

1. Whether under the statute a single transportation operation may be divided into two parts, and the operating company regarded as a railroad company in part, and an interurban railroad company in part?

2. If such a division of the parts can be made, do the facts stated in the answer show that the passenger or motor car service of the defendant is such as to constitute it an interurban railroad company as to that alleged branch of its business?

The answer, among other things, admits that defendant is a corporation organized under the laws of Ohio for the purpose of operating a railroad, and is now engaged in the operation of a railroad wholly in this state, from Lorain to Custaloga. Except as to certain other admissions not material here to state, defendant denies all other allegations of the petition.

Further answering, defendant says that during the period from June 30, 1913, to July 1, 1914, it operated its line of railroad by both steam and electric power, all of its freight business being handled by steam locomotives, and all of its passenger, express, milk and baggage business being handled by means of the Edison-Beach electric storage battery motor cars. That during the period in question the line of railroad of defendant was in operation only from Ashland to Custaloga, a distance of 21.5 miles; the remaining portion of the railroad being then under

construction; that during a portion of said time defendant's motor cars made three daily round trips, except Sundays, when they made two round trips; that during another portion of said time said motor cars made two round trips except Sundays; that during said time said motor cars made regular stops at all villages and stations between Ashland and Custaloga, and also stopped upon flag at every public highway and road crossing along the line between said points; that said motor car service, and the time, trip, stop and tariff schedules of the service, at all times fully met and satisfied all the demands and requirements of the company's patrons and the general public; that the change from steam to motor power was in the interest of and at all times has inured to the benefit of the company's patrons and the general public; that thereby the company was enabled to give and perform the service with greater speed and with more frequency of stops and service.

Defendant further avers that its gross earnings from its steam train service during said time was reported separately in detail in its annual report of gross earnings to the tax commission of Ohio, and that the same amounted to $22,860.07; that the gross earnings from its motor car service during same time was reported separately in detail in its annual report of gross earnings to the said tax commission, and that the same amounted to $9,748.93. That on July 12, 1915, defendant tendered to the state treasurer the sum of $1,031.39 as payment in full of said excise tax, this tender being for four per cent. on the gross receipts of the steam train service, and one and two-tenths per cent. on the gross receipts of the motor car service, which said treasurer refused to accept.

Defendant offers to confess judgment against it for said sum of $1,031.39, and prays to be dismissed with its costs.

Except the reported cases of the Cincinnati, Georgetown & Portsmouth Railroad and two other railroads named, against the state tax commission, reported in 10 Nisi Prius (N. S.), 617; and *Hocking Valley Ry. Co.* v. *Public Utilities Commission*, 92 O. S., —— (Ohio Law Reporter of Dec. 20, 1915), there are no other decisions of any court of record in this state that have any

bearing upon the issues here presented. A determination of the issues, therefore, devolves largely upon a construction of the statutes (the Public Utilities Act), Sections 5485, *et seq.,* Code, and the amendments thereof in 102 Ohio Laws, 224, *et seq.*

Section 5416, Code, seeks to define an interurban railroad company, and a railroad company, and to distinguish between the two. That section provides that a company or corporation "when engaged in the business of operating a street, suburban or interurban railroad, wholly or partly within this state, whether cars used in such business are propelled by animals, steam, cable, electricity or other motive power, is a street, suburban or interurban railroad company."

"When in the business of operating a railroad, either wholly or partly within this state, on rights-of-way acquired and held exclusively by such company, or otherwise, is a railroad company."

The Supreme Court in *Hocking Valley Ry. Co.* v. *Public Utilities Commission* (reported in Ohio Law Reporter of Dec. 20, 1915), defined the term "interurban service," and say:

"It is obvious that the commission used the term as meaning a service consisting of cars or trains which run more frequently than any through steam-passenger service and also a service in which frequent stops are made, so that patrons need not walk far along the line to arrive at the nearest stopping place. Such a service is to be distinguished from the ordinary passenger trains of steam railroads in that the latter do not stop except at regular stations located in cities or villages, which are at intervals much greater than the stops which the evidence shows were made by the defendant on the portion of its line involved in this proceeding."

It is clear that it is not material in determining this question whether an interurban railroad is operated by steam or by electricity or other motive power. It may, if otherwise established, be an interurban railroad regardless of its motive power. Nor is it indispensable to "a railroad company" that it be exclusively operated by steam locomotives. It may be such if operated by steam, or if operated partly by steam, and partly by electricity. The test appears to be in the frequency of the service, and the

frequency of the stops, as well as the character of the business which it carries on.

As to the frequency of the service and the frequency of the stops of defendant railroad company's motor cars, the answer, as heretofore stated, avers the number of cars operated daily over said branch during the period of time in question, and also avers the frequency of the stops, and further avers, "that the motor car service above referred to, and the time, trip, stop and tariff schedule of said service, at all times fully met and satisfied all the demands and requirements of the company's patrons and the general public. It appears from the finding in *Felicity & Bethel R. R. Co.* v. *Poland et al*, 10 N.P.(N.S.), 617, that company operated but one car over its line, the length of the line being eight miles. In *Railroad Co.* v. *Van Sanwood*, 216 Fed Rep., 252, cited in H. V. Ry. Co. case (*supra*), held that the frequency of the service depended upon whether the convenience and necessities of the residents were sufficiently met.

The demurrer admitting the allegations of the answer that the frequency of the service and stops fully met and satisfied all the demands and requirements of the company's patrons and the general public, I am of the opinion that so far as these grounds are concerned defendant company should be classed as operating an interurban railroad at said time between Ashland and Custaloga.

A more difficult question in this case is notwithstanding the company operates an interurban railroad on the branch between Ashland and Custaloga, inasmuch as said company also operates a steam commercial railroad, and derives greater gross receipts in the operation of the steam commercial railroad than from the operation of its interurban service, whether such operations can be divided, under the excise law, and the said company be regarded in its operation as a railroad company in part, and an interurban railroad company in part.

The court in *Youngstown & Ohio River R. R. Co.* v. *Poland et al*, 10 N.P.(N.S.), 627, held that the railroad company should be taxed as an interurban railroad, when in fact it ought to pay a part of its tax as a "railroad company," and held it should be taxed in the two capacities.

The facts show that said railroad carried on the passenger traffic on the road by means of its electric cars; a part of its freight traffic was carried on by steam power, and a part of freight traffic carried on by electric power; that about fourteen per cent. of its gross earnings was earned by operation of steam power, and the remainder being earned by the use of electricity in hauling both freight and passenger cars. It appears that error was prosecuted to the court of appeals as to all three of said railroad cases, which court affirmed the judgments except as to the Youngstown & Ohio River Railroad Co., which latter case counsel advises the court was dismissed by the court of appeals.

The distinction as to the facts between the case at bar and the case of the Youngstown & Ohio Railroad case (*supra*) is that the gross receipts of the operation of the steam or commercial branch of the railroad in the case at bar exceed the receipts of the inter-urban branch of the road. The gross receipts of the Youngstown & Ohio River Railroad, as to the part operated by electric motor power, exceed the gross receipts of that part operated by steam. Yet the facts in the latter case show that the receipts from the part operated by electric motor power are both from the carriage of passengers and freight.

The case of *H. V. Ry. Co.* v. *Public Utilities* (*supra*), while it does not involve or decide the question of excise tax, yet I am of the opinion that the logic of the opinion of the Supreme Court in that case aids in reaching a conclusion in the case at bar.

The Hocking Valley Railway Co. held and operated, among other branches, a railroad line originally known as the Wellston & Jackson Belt Railway. In 1896 said Hocking Valley Railway Co. provided steam service on said line for handling freight and certain passenger train service between Jackson, Dundas and Logan, where connections were made with the main lines of said company. At about the same time electric service was introduced for the handling of local passenger traffic between Jackson and Wellston, and was later extended to Hamden.

It therefore appears that said Hocking Valley Railway Co. operated said line between Jackson and Hamden both for through service by steam, and by electric service for passenger

service. In other words, it operated an interurban electric railroad from Jackson to Hamden, and also operated over the same line a commercial railroad for through traffic to and over its main lines, making connections at Logan. In 1914 the Hocking Valley Railway Co. gave notice of its intention to discontinue the operation of electric cars, and claimed that its steam service on said branch would answer all requirements of the traffic.

The question was whether under all the circumstances said company would be permitted to discontinue said electric interurban service, or whether the company would be required to continue the same. The public utilities commission held against the railroad company, and directed said company to continue to furnish the same interurban passenger service for the benefit and use of the public on said line. This order of the public utilities commission was affirmed by the Supreme Court.

The defendant company desires to continue its interurban service between Ashland and Custaloga. The Hocking Valley Railway Co. desired to discontinue its interurban service on its said branch, but the effort so to do was overruled, and it was forced to continue the interurban service.

The facts and circumstances are not materially different as to the two railroads, and both are chartered as "railroad companies," and not as "interurban railroad companies."

Under the ruling made in the Hocking Valley Railway case, the defendant company could not discontine its interurban service if an intention so to do was contested.

The state in the exercise of its power to direct the continuance of interurban service by a railroad operated in both capacities, could not consistently require such railroad to pay an excise tax on the gross receipts of the interurban branch of its service of four per cent., which is the percentage provided by statute for commercial railroads.

Under the statute an interurban railroad is required to pay but one and two-tenths per cent. excise tax on its gross receipts.

From a construction of the statutes, and the authorities above cited, I am of the opinion that a single transportation operation of defendant railroad may be divided, and the defendant company regarded as "a railroad company" in part and an "inter-

urban railroad company'' in part, and that the answer states facts sufficient to constitute said branch of defendant company as an ''interurban company.''

The demurrer to the answer is overruled.